UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| JOSEPH WATSON | CIVIL ACTION NO. 11-cv-0603 |
| VERSUS | JUDGE FOOTE |
| JERRY GOODWIN, ET AL | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

**Introduction**

Joseph Watson ("Plaintiff") is a self-represented former prisoner who was housed at David Wade Correctional Center. He filed this civil rights action against Warden Goodwin, Warden Hanson, Colonel Nail, Colonel Benson, and Captain Hickman based on allegations Plaintiff was denied out-of-cell exercise for several months. Defendants have filed a Motion for Summary Judgment (Doc. 32) and challenged Plaintiff's entitlement to legal relief. For the reasons that follow, it is recommended the motion be granted and Plaintiff's complaint be dismissed.

**Relevant Facts**

Defendants do not contest Plaintiff's basic allegations that he was denied out-of-cell exercise for a considerable length of time. They have not submitted any affidavits regarding the size of Plaintiff's cell or the ability to exercise inside the cell, as have been submitted in similar cases in the past, but they do submit copies of Plaintiff's medical records and his administrative grievance file to flesh out some of the relevant facts.

Exhibits filed by Plaintiff (Doc. 24) indicate that he was disciplined a number of times in 2010 for charges such as contraband and aggravated disobedience. His penalties included loss of yard and recreation privileges for several weeks per incident. Plaintiff alleges that he spent the first half of 2010 in the N-1 working cellblock. A prison official, in a grievance response, described N-1 as a closed cell unit where offenders are confined in their cells except when outside for work or recreation. Plaintiff, however, was not allowed outside for recreation due to his disciplinary penalties. He contends that he was denied out-of-cell exercise from January 2010 to July 14, 2010.

It appears that Plaintiff first complained about a lack of exercise in July 2010, and Colonel Nail met with Plaintiff to discuss the matter. Nail changed the policy so that from July 15, 2010 forward, inmates serving a disciplinary sanction of loss of yard and recreation who were assigned to the cellblock would be allowed outside Monday through Friday to properly exercise their major muscle groups. One of Plaintiff's filings states that he was allowed on the yard on June 27 and 29, as well as July 3 and 4, 2010. Doc. 24, Exhibits, at p. 26. He complained that weather and the use of the area by other inmates had interfered with his ability to go outside every weekday.

Soon afterward, around July 25, 2010, Plaintiff was transferred from the cellblock to H-5, a transitional dormitory. He continued to serve a disciplinary sanction of loss of yard and recreation, and he was not allowed outside. Plaintiff alleges that some other inmates were exercising inside the dorm when Captain Hickman told them that they could not exercise inside. Plaintiff noted this in a grievance and said he wrote Colonel Nail about his

need to exercise, but Nail did not respond. When the grievance was reviewed, Captain Hickman said he had no knowledge of the incident. Colonel Nail noted in a written report in response to the grievance that the dormitory had a large open area where prisoners could freely move around, unlike a cell, and offenders serving loss of yard and recreation could exercise their major muscle groups inside the dorm by walking around.

Documents filed by Plaintiff include a memorandum that notes that offenders on yard/rec suspension are allowed an occasional break from the suspension. A memorandum to Plaintiff notes that he received a break in his suspension during the week of August 1 to August 8, and he had another break scheduled for October 31 to November 7. Doc. 24, Exhibits, p. 31-32.

Plaintiff alleges in his complaint that his lack of exercise gave rise to arthritis in his shoulder and knees, numbness in his fingers, blurred vision, and depression. Medical records from 2009, before the time in 2010 when Plaintiff complains he was denied out-of-cell exercise, show that Plaintiff received routine medical care, including orthopedic shoes, Icy Hot and ibuprofen for neck and shoulder discomfort, an X-ray to check on complaints of neck pain, ibuprofen and reduced duty status to address complaints of knee pain (despite no swelling or obvious injury), and the like. Plaintiff was treated by prison medical officials a number of times in 2010 for matters such as his orthopedic shoes, a slight headache and light traces of blood after blowing his nose, complaints of high blood pressure and dizziness, neck pain, blurred vision and headaches that were addressed by referral to an eye doctor, and complaints of shoulder and knee pain that were referred to a physician. There is no

indication in the medical records that any of these problems were caused by or even attributed to lack of exercise. Plaintiff did complain in June 2010 that his eyesight was blurry and he was not getting enough fresh air, which he said was an ongoing problem. He was prescribed Claritin and referred to a physician for the eyesight issues.

Plaintiff, who is now released from prison, included in his response (Doc. 50) a record from a post-release February 2013 medical examination for complaints of foot and leg pain. The notes of the visit indicate that Plaintiff reported warts on his feet for over 20 years; the prison medical staff would sometimes scrape them off, but they would grow back. Plaintiff reported a car accident several years earlier where some wires burned him across the foot, put a hole in the back of his leg, and deformed his big toe. Plaintiff was not taking any medication, he was well developed and well nourished, in no acute distress, he had a normal range of motion of the spine, and his other general functions were quite normal. Plaintiff submits other documents that show he was, however, granted disability benefits based on a finding by the Social Security Administration that he has back disorder, neck disorder, leg and ankle pain, and anxiety disorder that have prevented him from working since October 12, 2012.

**Analysis**

To establish an Eighth Amendment violation for conditions of confinement, an inmate must show that the alleged violation was sufficiently serious, i.e., that it deprived him of the most minimal level of life's necessities. Farmer v. Brennan, 114 S.Ct. 1970 (1994); Wilson v. Seiter, 111 S.Ct. 2321 (1991). Exercise is "an identifiable human need," such as food and

warmth, deprivation of which may violate the Eighth Amendment. <u>Wilson</u>, 111 S.Ct. at 2327. The Fifth Circuit has evaluated such claims on a case-by-case basis using the following criteria: (1) the size of the inmate's cell; (2) the amount of time the inmate spends locked in his cell each day; and (3) the overall duration of the inmate's confinement. <u>Hewitt v. Henderson</u>, 271 Fed. Appx. 426, 428 (5th Cir. 2008).

The inmate must also show that a named defendant acted with deliberate indifference to his health or safety. That requires he show that the prison official subjectively knew that the inmate faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. <u>Farmer</u>, 114 S.Ct. at 1984. Deliberate indifference is "an extremely high standard to meet." <u>Gobert v. Caldwell</u>, 463 F.3d 339, 346 (5th Cir. 2006).

A prisoner presented a similar claim in <u>Hernandez v. Velasquez</u>, 522 F.3d 556 (5th Cir. 2008) after he was placed in protective lockdown status and denied all outdoor and out-of-cell exercise privileges for 13 months. He described his cell as 5' by 9', usually shared with another inmate. He was allowed to leave the cell only for showers, medical appointments, and family visits. Prison officials did provide the inmate with information on how to perform in-cell exercises. He nonetheless claimed that his muscles had atrophied and he had lost his range of movement and flexibility. The inmate filed grievances, and prison officials responded that he had to be kept on lockdown for safety and security reasons related to gang activity. The Fifth Circuit affirmed summary judgment for the prison officials based on a finding the inmate could not show deliberate indifference as required by <u>Farmer</u>; there was no record evidence the inmate was ever placed at substantial risk of serious harm.

The same is true in this case. The medical records show that Plaintiff suffered from only minor medical issues during the time he was without exercise, and almost all of those problems preexisted the lack of exercise. None of them amounted to a serious illness or injury sufficient to trigger the Eighth Amendment's concern with cruel and unusual punishments. There is also no genuine dispute as to whether any named defendant was deliberately indifferent to Plaintiff being placed at a substantial risk of serious harm. The record shows that when Plaintiff complained of his lack of exercise, prison officials responded promptly by allowing outdoor exercise on weekdays for cellblock inmates. Plaintiff encountered some frustration in being allowed to exercise after he was moved to the dormitory, but the record suggests that the dormitory was a large, open area that permitted Plaintiff to move about freely, even if he was perhaps not allowed to engage in full-on calisthenics. There is also evidence that Plaintiff was allowed periodic one-week breaks from his yard/rec suspension during the time he was housed in the dormitory. The summary judgment evidence leaves no genuine dispute as to any fact that might, if resolved in Plaintiff's favor, result in a verdict for Plaintiff.

Accordingly,

**IT IS RECOMMENDED** the Defendants' Motion for Summary Judgment (Doc. 32) be **granted** and that all claims against all Defendants be **dismissed with prejudice**.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and

recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 4th day of February, 2014.

Mark L. Hornsby
U.S. Magistrate Judge